**J.B. PRESS, et al., Appellants,**

v.

**The CITY OF MINNEAPOLIS, Respondent.**

No. C8–96–519.

Court of Appeals of Minnesota.

Aug. 27, 1996.

Steven Press, Minneapolis, for Appellants.

Michael T. Norton, Acting City Attorney, Timothy S. Skarda, Assistant City Attorney, Minneapolis, for Respondent.

Considered and decided by HUSPENI, P.J., TOUSSAINT, C.J., and FOLEY, J.

## OPINION

DANIEL A. FOLEY,* Judge.

Appellants J.B. Press and T. Press brought this action against respondent City of Minneapolis seeking to declare Minneapolis, Minn., Code of Ordinances § 244.965 (1995) unconstitutional, to quash two work orders issued by the city requiring the Presses to replace certain doors in their apartment buildings, and to enjoin the city from enforcing the ordinance against their properties. The district court denied the Presses' motion for relief on their complaint and subsequently granted the city's motion to dismiss the Presses' complaint for lack of subject matter jurisdiction. The Presses appeal. We reverse and remand for further proceedings.

## FACTS

The Presses own two apartment buildings in Minneapolis. The buildings were constructed in the early 1960's and apparently met the city's building code at that time.

In 1982, the city adopted an ordinance requiring fire resistant doors in certain areas of apartment buildings. That ordinance states in pertinent part:

[A]ll passage doors opening from dwelling units into shared, communal or public spaces of multiple dwellings shall be modified in a manner approved by the director of inspections so as to provide approximately the same fire-resistive rating as provided by a one-and-three-eighths-inch-thick solid bonded wood core door. Compliance with the foregoing requirements shall be not later than August 1, 1985.

Minneapolis, Minn., Code of Ordinances § 244.965.

The Minneapolis Inspections Department initially allowed modification of hollow core doors by the addition of plywood to add time to those doors' fire rating. A 1983 memo issued by the department stated that "10 minute fire resistive" doors met the requirements of the ordinance.

In 1991, the department began to require the replacement of hollow core doors. A 1991 informational bulletin issued by the department to its inspectors stated that a "labeled fire resistive door assembly of 20 minutes or greater" was required. The bulletin further stated:

The effective date of this policy shall be September 1, 1991. Modifications made and approved prior to this date need not be updated. Any deviation from this policy shall be made by the Director of Inspections.

A more recent 1994 bulletin similarly refers to "labeled 20 minute or greater fire resistive door assembl[ies]" as acceptable types of doors. The city has not permitted any property owner to modify hollow core doors since 1991.[1]

On June 7, 1994, the department ordered the Presses to replace the apartment entry doors at 615 East 18th Street with "labeled 20 minute fire doors or modify the interior side of existing doors so [they are] tight-fitting and equivalent to a 1⅜ [inch] solid wood core door." The department's order specifically stated that "[h]ollow core doors are not acceptable and cannot be modified." On June 13, 1994, the city's fire department ordered the Presses to install 20 minute rated fire doors or solid core doors at 625 East 18th Street. The Presses estimate that it will cost them over $68,000 to replace the 102 hollow core doors in the two buildings.

The Presses appealed these two orders to the Minneapolis Housing Board of Appeals. Minutes of the September 14, 1994 hearing state:

There was lengthy discussion about when the State is expected to acquire this property for the I-35W right of way. This is at the legislature at the present time. The legislature will meet again in February of 1995. Mr. Press requested a delay of 12 months to comply with these orders or that this be continued until after the legislature

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**1.** Neither party explains why 10 minute doors were acceptable prior to 1991, while 20 minute

doors are now required. The ordinance itself has not been amended and merely requires that a door meet the "same fire-resistive rating as provided by a one-and-three-eighths-inch-thick solid bonded wood core door."

meets in Feb. It was moved and seconded by [a board member] that this appeal be denied. The board encouraged staff to deal with the recommendation that the Inspections Department consider delaying enforcement. The Board indicated to Mr. Press that their main concern is the safety of the renters. It was also recommended that the appeal be returned to the Department to decide on a schedule for enforcement. Mr. Press was told that the staff will work with him on a due date after we know what happens at the legislative session in February of 1995.

The board passed a motion to "deny the appeal and return it to the Department of Inspections to work out an appropriate timetable." The Presses did not appeal the board's decision.

In December 1994, the Presses brought this action in district court. They moved to declare the ordinance unconstitutional, to quash the two orders, and to enjoin the city permanently from enforcing the ordinance against their properties. The district court concluded that the ordinance was constitutional and denied the Presses' motion in its entirety.

The city thereafter moved to dismiss the complaint for lack of subject matter jurisdiction.[2] The district court agreed that it did not have jurisdiction and concluded that the Presses should have petitioned the court of appeals for a writ of certiorari following the board's denial of their appeal from the two work orders. The district court granted the city's motion and entered judgment dismissing the Presses' complaint.

## ISSUES

I. Did the district court err in concluding that it lacked subject matter jurisdiction to consider the Presses' various challenges to the work orders?

II. Did the district court properly conclude that the ordinance is constitutional and enforceable as interpreted by the city?

2. The city alternatively moved to dismiss the Presses' complaint for failure to state a claim upon which relief can be granted under Minn. R. Civ. P. 12.02(e). The district court did not rule

## ANALYSIS

### I.

■ Generally, the sole remedy after denial of an appeal by a quasi-judicial board or agency is by writ of certiorari to the court of appeals, not by direct appeal to the district court. *See, e.g., Naegele Outdoor Advertising, Inc. v. Minneapolis Community Dev. Agency,* 551 N.W.2d 235 (Minn.App. 1996) (MCDA decision regarding entitlement to relocation benefits for advertising signs); *Micius v. St. Paul City Council,* 524 N.W.2d 521, 523 (Minn.App.1994) (city council's denial of liquor license application); *Neitzel v. County of Redwood,* 521 N.W.2d 73, 75–76 (Minn. App.1994) (county board's denial of application for conditional use permit for hog feedlot), *review denied* (Minn. Oct. 27, 1994); *Township of Honner v. Redwood County,* 518 N.W.2d 639, 641 (Minn.App.1994) (county board's decision to alter township boundaries), *review denied* (Minn. Sept. 16, 1994). This procedural rule applies to a quasi-judicial act, which is an act of a public officer or board that is

> presumably the product or result of investigation, consideration and deliberate human judgment based upon evidentiary facts of some sort commanding the exercise of their discretionary power.

*Oakman v. City of Eveleth,* 163 Minn. 100, 108–09, 203 N.W. 514, 517 (1925). Quasi-judicial conduct is also marked by a decision binding on the parties and enforceable against one of them. *Meath v. Harmful Substance Compensation Bd.,* 550 N.W.2d 275 (Minn.1996).

■ For several reasons, we do not believe that the district court lacked jurisdiction to consider the Presses' challenges to the work orders. First, the Presses do not challenge any quasi-judicial conduct on the part of the board; rather, their underlying challenge to the work orders involves the city and the department's *interpretation* of the ordinance. Certiorari is not available to review legislative or purely ministerial acts of

on this alternative motion. We therefore decline to address the city's rule 12.02(e) motion at this time. *See Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988).

administrative agencies or officers. *Mahnerd v. Canfield,* 297 Minn. 148, 152, 211 N.W.2d 177, 179 (1973).

Second, it is unclear whether the board even had the authority to grant the relief requested by the Presses, who sought declaratory and injunctive relief. *Cf. Miller v. City of St. Paul,* 363 N.W.2d 806, 810 (Minn.App. 1985) (revocation of liquor license may be reviewed in action for injunction as well as by writ of certiorari), *review denied* (Minn. Apr. 26, 1985). The board's jurisdiction is limited and it does not have the authority to "quash or modify any order * * * enforcing the Minneapolis Building Code." Minneapolis, Minn., Code of Ordinances § 242.80(g) (1995).

Finally, the city has the right to sue for enforcement of its housing code. *See* Minneapolis, Minn., Code of Ordinances § 244.80(a) ("city * * * or any person with standing to sue may seek enforcement * * * in any court of competent jurisdiction by any appropriate form of civil action and may seek enjoinment of any continued violation"). Property owners should have a reciprocal right to sue for alleged unlawful enforcement. *Cf. State v. Ellis,* 441 N.W.2d 134, 137 (Minn.App.1989) ("if order is unlawful, vague, doesn't comply with building code, or is served upon the wrong party, that party would have a defense to enforcement"), *review denied* (Minn. July 12, 1989).

Thus, the district court erred in concluding that the Presses' sole remedy was writ of certiorari following the board's action. The Presses cannot be precluded from challenging the work orders and the enforceability of the ordinance in district court.

## II.

■ Ordinances, like statutes, are presumed valid and may not be found unconstitutional unless clearly invalid or shown beyond a reasonable doubt to violate the constitution. *Essling v. Markman,* 335 N.W.2d 237, 239 (Minn.1983); *Ellis,* 441 N.W.2d at 136–37. The party challenging

the ordinance's constitutionality has the burden of proof. *Ellis,* 441 N.W.2d at 137.

### Vagueness

■ Due process requires that an ordinance that provides for criminal prosecution [3] be drafted "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983); *see also State v. Becker,* 351 N.W.2d 923, 925 (Minn.1984). A party challenging an ordinance on vagueness grounds must show that it lacks specificity as to his own behavior and not some hypothetical situation. *City of Edina v. Dreher,* 454 N.W.2d 621, 622 (Minn. App.1990), *review denied* (Minn. June 15, 1990).

The ordinance at issue here states that doors

shall be modified in a manner approved by the director of inspections so as to provide approximately the same fire-resistive rating as provided by a one-and-three-eighths-inch-thick solid bonded wood core door.

Minneapolis, Minn., Code of Ordinances § 244.965. The manner of modification currently approved by the director is outlined in Informational Bulletin Number 3–B, which was issued May 5, 1994, and which indicates that "labeled 20 minute or greater fire resistive door assembl[ies]" are acceptable.

The Presses claim that the language "shall be modified" is vague because it is susceptible to differing interpretations. The city counters that when the text of the ordinance and the supplemental information provided by bulletin 3–B are considered together, persons of ordinary intelligence are able to understand what is and is not permitted by the ordinance. We agree.

The ordinance and the supplemental bulletin provided an objective standard that provided adequate notice of what was required. Violation of the ordinance did not turn on a

---

**3.** While the ordinance itself does not directly provide for criminal prosecution, the Presses were warned that failure to comply with the work orders was a misdemeanor punishable with up to $700 fine and/or 90 days in jail.

subjective judgment that could be arbitrarily exercised by individual building inspectors. Thus, the ordinance is not unconstitutionally vague because persons of common intelligence can readily determine what constitutes a violation and what meets the requirements of the ordinance. *Cf. Dreher,* 454 N.W.2d at 623–24 (holding ordinance unconstitutionally vague when dog owner was ·left to guess whether dog's barking disturbed others, ordinance provided no objective standard against which owner could measure level of dog's barking, and violation of ordinance turned on neighbors or investigating officer's level of tolerance or intolerance for barking).

### Improper Delegation of Legislative Power

■■■■■ Legislation may delegate discretionary power to administrative authorities in order to "leave preciseness and detail of application to administrators who supposedly will bring an expert's familiarity to bear upon the problems under consideration." *Welsand v. R.R. & Warehouse Comm'n,* 251 Minn. 504, 509, 88 N.W.2d 834, 838 (1958). The legislature, or in this case the city council, need not expressly delineate with particularity or exactness each and every phase of the power so conferred, but may give administrators reasonable flexibility. *Id.* The law or ordinance, however, must furnish a reasonably clear policy or standard that controls and guides the administrators. *See Anderson v. Commissioner of Highways,* 267 Minn. 308, 311, 126 N.W.2d 778, 780 (1964).

■■■ The Presses argue that the ordinance improperly delegates power to the director to approve methods of modification. The ordinance expressly grants authority to the director to approve the manner in which doors may be modified. That grant of authority is limited and well defined by the ordinance, which allows modification "so as to provide approximately the same fire-resistive rating as provided by a [1⅜ inch] thick solid bonded wood core door." The ordinance does not give the director unlimited power or authority to mandate standards. Conse-

quently, it is not an unlawful delegation of power. *See Ellis,* 441 N.W.2d at 137 (ordinance does not unconstitutionally authorize director of inspections to define crime but only to enforce building code).

### Interpretation of Ordinance

The Presses argue that while the ordinance allows "modification" of doors, it does not encompass or allow "replacement" of doors. This argument is not really a constitutional challenge to the ordinance, but is more properly considered a defense to enforcement of the ordinance or a challenge to the director's interpretation of that ordinance.

■■■■ The interpretation of an existing ordinance is a question of law. *Frank's Nursery Sales, Inc. v. City of Roseville,* 295 N.W.2d 604, 608 (Minn.1980). In determining whether a city's interpretation of an ordinance is correct, courts generally "strive to construe a term according to its plain and ordinary meaning." *Id.* In addition, an ordinance must always be examined in light of its underlying policy. *Id.* at 609. And while the administrative interpretation of an ordinance is entitled to respect, it is not necessarily controlling. *Id.*

On the record before us, we cannot determine whether the director's interpretation is unreasonable or unauthorized by the ordinance. Given the weighty public safety considerations that underlie the ordinance's purpose, we agree that the director has the authority to order "replacement" of doors if no "modification" will achieve the specified fire-resistive rating. As already noted, the ordinance has not been amended, yet the director's interpretation has changed from allowing 10 minute fire resistive doors and modification of hollow core doors to requiring 20 minute doors and replacement of hollow core doors. On remand, the Presses should be allowed to present evidence that any proposed modifications to their hollow core doors, whether by addition of plywood or fire resistive paint,[4] would achieve the necessary

---

4. The Presses' complaint alleges that the work orders issued by the City's inspections and fire departments require them to replace the interior doors in their buildings with doors that will

increase the fire rating by approximately 10 minutes. The complaint further alleges that the two departments are not in agreement as to the minimum work required and will not make a decision

fire resistive rating. The City may oppose the Presses' proposed modifications by presenting evidence to support the director's interpretation of the ordinance.

## DECISION

The district court's dismissal of the Presses' complaint is reversed and the matter is remanded for further proceedings consistent with this opinion.

**Reversed and remanded.**

regarding the application of a fire-retardant paint that would increase the doors' fire rating by approximately 10 minutes.