**HANDICRAFT BLOCK LIMITED PARTNERSHIP, Relator,**

v.

**CITY OF MINNEAPOLIS, Respondent.**

No. C2–98–2237.

Court of Appeals of Minnesota.

Aug. 17, 1999.

Gary A. Van Cleve, Sharna A. Wahlgren, Larkin, Hoffman, Daly & Lindgren, Ltd., Bloomington, for relator.

William C. Dunning, Minneapolis, for respondent.

Considered and decided by CRIPPEN, Presiding Judge, TOUSSAINT, Chief Judge, and LANSING, Judge.

## OPINION

TOUSSAINT, Chief Judge.

The City of Minneapolis (the city) designated for heritage preservation the Handicraft Guild Building and the building adjacent to it, located at 89–91 South Tenth Street and 1004 Marquette Avenue. Relator Handicraft Block Limited Partnership, which currently owns the buildings, challenges the designation.

## FACTS

The Handicraft Guild Building, built in 1907, was designed by Minneapolis architect William Channing Whitney and was financed by philanthropist Joseph A. Kingman. It is a three-story brick building, built in the Georgian Revival style. The Handicraft Guild itself was a tenant of the building, but never owned it. The words "Handicraft Guild" are pressed into the frieze above the entry of the building, indicating the building was originally meant for use by the Guild. The Landscape Research Report, compiled for the city, says the building is significant because it

> housed one of the nation's leading arts organizations during the period in which interest in the Arts and Crafts movement flourished, and it exemplifies a unique aspect of the city's cultural and artistic heritage.

The report concludes that the Guild was an "exemplary American arts and crafts organization," and it represented a "model arts and crafts organization of the early twentieth century." The Handicraft Guild Building currently houses various tenants including an appliance store and a restaurant. The building adjacent to the Handicraft Guild Building was built later, possibly as an addition to the Guild Building, and the city apparently treats the two buildings as one structure today.

Until recently, the city did not have an interest in these two buildings. In fact, it seems the city had earmarked the block for redevelopment. But in June 1998, Ryan Properties, Inc. entered into an option to purchase the Handicraft Guild Building and the adjacent building for development of a new hotel. Ryan Properties inquired about historical attributes of the property, triggering the city's interest in pursuing heritage designation of the property. The city notified relator on June 25, 1998, of its intent to consider designation of the buildings at the next Heritage Preservation Committee (HPC) meeting. The HPC held a public hearing on July 14, 1998, and voted without a quorum to recommend the designation of the buildings. On July 21, 1998, a quorum of the HPC voted to ratify the July 14 decision and recommend designation. On August 11, 1998, the HPC held another public hearing and recommended the designation of the building adjacent to the Handicraft Guild Building as well.

The City Planning Commission conducted a hearing on August 24, 1998, and the Zoning & Planning Committee held a public meeting on September 22, 1998, at which relator was represented by counsel. The committees both voted to recommend designation of both buildings. The committees based their recommendations on guidelines contained in the City's Comprehensive Plan. On October 2, 1998, the City Council voted to designate the exterior of both buildings for heritage preservation. Relator appealed to this court for certiorari review of that decision. After briefs were submitted for appeal, this court directed the parties to reconsider the issue of whether this decision was quasi-legislative or quasi-judicial in light of the recent case, *Minnesota Ctr. for Envtl. Advocacy v. Metropolitan Council*, 587 N.W.2d 838, (Minn.1999).

## ISSUE

Is the decision to designate buildings for heritage preservation quasi-legislative or quasi-judicial?

## ANALYSIS

■ This case came to this court by writ of certiorari. "Certiorari is an 'extraordinary remedy' only available to review judicial or quasi-judicial proceedings and actions." *Minnesota Ctr. for Envtl. Advocacy v. Metropolitan Council*, 587 N.W.2d 838, 842 (Minn.1999) (*MCEA*). Certiorari is not available to review legislative or administrative actions. *Id.*

■ Relator argues the decision to designate the buildings was quasi-judicial and therefore is reviewable by writ of certiorari by this court. We disagree. It is frequently difficult to distinguish among judicial, legislative, and administrative acts. *Western Area Business & Civic Club v. Duluth Sch. Bd., Indep. Dist. No. 709*, 324 N.W.2d 361, 365 (Minn.1982). The supreme court recently established three factors a court should consider in determining whether an action is quasi-judicial:

(1) investigation into a disputed claim and weighing of evidentiary facts;

(2) application of those facts to a prescribed standard; and

(3) a binding decision regarding the disputed claim.

*MCEA*, 587 N.W.2d at 842. Failure to meet any of the three indicia is fatal to a claim that the proceedings were quasi-judicial. *Id.* at 844.

### I.

In analyzing the first factor, the *MCEA* court noted that the deliberative process involved researching the project's "costs, needs, advantages, location, and size and capacity" along with receiving comments in support of and in opposition to the project from a wide range of public officials and interested parties, including the appellant. *Id.* at 842. The court also noted that (1) the Met Council did not take evidence in accordance with formal or informal evidentiary rules; (2) testimony was not given under oath, and (3) there were no formally identified parties to the proceeding offer-ing evidence to support a legal claim. *Id.* at 842–43. The court determined:

> Respondent's decisions, as with other governmental agencies, are guided by both objective information and public input. We conclude that respondent's gathering and consideration of information is vastly different from the judicial process of determining facts for the purpose of reaching a legal conclusion in resolution of adversarial claims – therefore it cannot be characterized as quasi-judicial * * *.

*Id.* at 843.

In this case, the city held at least three public hearings before voting for designation of the property, namely the July 14, 1998, HPC hearing; August 24, 1998, City Planning Commission hearing; and September 22, 1998, Zoning & Planning Committee hearing. Interested parties, including relator, were allowed to comment on the designation both during these hearings and by sending letters to the city council. In addition to numerous concerned citizens, many groups commented in favor of designation, including the Minneapolis Institute of Arts, the Lowry Hill History Committee, the Minnesota Orchestra, the Preservation Alliance of Minnesota, the National Trust for Historic Preservation, the Minnesota Historical Society, and Women Historians of the Midwest. Relator submitted evidence to oppose the designation, including a report concluding the buildings are not worthy of designation (the Martinson report) and a Rupert & Rupert Associates, Inc. report detailing the pecuniary loss to relator that would result from the heritage designation. As in *MCEA*, this research and public comment aspect of the decision process is "far more typical of a legislative proceeding than of a judicial proceeding." *Id.* at 842. Also like *MCEA*, evidence was not taken formally and testimony was not given under oath. *Id.*

Relator claims the proceedings were disputed and therefore adversarial. Although it is clear that the city knew of

relator and relator's opposition to designation of the buildings, relator was not formally identified as a party to the proceeding as required of a true adversarial proceeding. The city and its committees conducted hearings to determine whether it was appropriate to designate the buildings for preservation. Relator's position was a factor in that determination. The city's hearings were about the building significance to the city of Minneapolis. This was not an adversarial proceeding with formally identified parties. *See Metropolitan Baptist Church v. District of Columbia, Dep't of Consumer & Regulatory Affairs – Historic Preservation Review Bd.*, 718 A.2d 119, 125 (D.C.App. 1998) (finding that a hearing to designate a landmark district was legislative, even though the decisions affected specific property owners within a given neighborhood, because "they also affect the general public and require the digestion of various economic, environmental, and aesthetic considerations").

Relator tries to distinguish this case from *MCEA*, arguing that *MCEA* dealt with broad policy-making functions, whereas this ordinance applies to a single property owner with a binding effect, similar to a judicial proceeding. But the decision to designate a building for heritage preservation is also a policy determination that affects the public at large. *See id.* (finding that in determining whether to designate the area historic, the board was making " 'a policy decision directed toward the general public,' which is a legislative process, rather than 'weighing particular information and arriving at a decision directed at the rights of specific individuals,' which is an adjudicatory process") (quotation omitted).

As in *MCEA*, the case at hand involves a detailed research and comment process, which did not require testimony under oath. Adversarial parties were not identified as such. We conclude this factor indicates that designation was a quasi-legislative, not quasi-judicial, determination.

### II.

The second factor is whether the city used a prescribed standard in deciding to designate the buildings. In *MCEA*, the court found that the long-range plan for the area and the goals stated in the blueprint for the area were simply goals, not prescribed standards. 587 N.W.2d at 843–44. The court determined, "[B]ased on the non-specific nature of the planning documents and the flexible compliance inherent in the language of the statute," the city did not have a prescribed standard for its decision and therefore did not make a quasi-judicial decision according to this factor. *Id.* at 844.

Here, the Heritage Preservation Commission report addressed the primary and secondary considerations the Commission used as "guidelines" in making the decision for preservation. The "primary considerations" state:

Structures, lands, areas or districts considered for preservation shall exemplify the broad trends of cultural, political, economic or social history; however, they may also represent an unusual counter development to such broad trends.

The "secondary considerations" include the economic and physical soundness of the buildings. Relator argues the city used specific standards with mandatory considerations to come to its decision, making it quasi-judicial. We disagree. The "guidelines" are not meant to be exclusive considerations or specific requirements. The city retains the discretion to consider factors other than those listed, on a case-by-case basis. We conclude this factor also indicates that the decision was not quasi-judicial, but quasi-legislative.

### III.

The third factor is whether the city's decision is a binding decision that affects a disputed claim. The city admits that its decision to designate the buildings for heritage preservation creates both rights and

responsibilities for relator, and therefore concedes that this prong indicates the decision is quasi-judicial rather than quasi-legislative. But failure to meet *any* of the indicia is fatal to a petitioner's claim that proceedings were quasi-judicial. *Id.* Because the first two factors indicate the decision to designate the buildings was quasi-legislative, we conclude that the designation was quasi-legislative, and certiorari review by this court is inappropriate.

## DECISION

The decision to designate the heritage buildings for heritage preservation was quasi-legislative and is not reviewable by this court on a writ of certiorari. The dismissal of this appeal is not intended to preclude the relator from making a constitutional challenge to the district court.

**Writ of certiorari discharged.**