**COUNTY OF MARTIN, et al., Respondents,**

v.

**MINNESOTA COUNTIES INSURANCE TRUST, Appellant.**

No. C2–02–1210.

Court of Appeals of Minnesota.

April 1, 2003.

Thomas L. Fabel, Wallace G. Hilke, Sarah B. Stroebel, Lindquist & Vennum, P.L.L.P., St. Paul, for respondents.

Jay T. Squires, Ratwik, Roszak & Maloney, P.A., Minneapolis, for appellant.

Considered and decided by
PETERSON, Presiding Judge, HARTEN, Judge, and HALBROOKS, Judge.

## OPINION

HALBROOKS, Judge.

Respondent counties (the counties) brought a breach-of-contract and declaratory-judgment action against appellant Minnesota Counties Insurance Trust, seeking a declaration that appellant was obligated to defend and indemnify respondents in a lawsuit relating to housing bonds. Appellant moved for dismissal based on lack of subject-matter jurisdiction. Appellant contends that its decision to deny coverage was a quasi-judicial decision made by an administrative body that is reviewable only through certiorari. Because the district court correctly determined that it had subject-matter jurisdiction, we affirm the district court's denial of appellant's motion to dismiss.

## FACTS

In the early 1990s, the South Central Minnesota Multi-County Housing and Redevelopment Authority (HRA) issued bonds for the development of a multi-county housing project called the Amberfield Project. The counties entered into an operating-deficit agreement providing that the counties would exercise their "best ef-

forts" to obtain approval for a special tax levy if revenue from the housing program was not adequate to repay the bonds. When the project generated insufficient revenue, the HRA asked the counties to approve a tax levy. Pursuant to decisions by their boards of commissioners, the counties rejected the proposal. As a result, the bonds went into default.

The Franklin High Yield Tax-Free Income Fund, which had purchased many of the bonds, sued the counties and their commissioners, alleging breach of contract and misrepresentation. The counties submitted the complaint to appellant Minnesota Counties Insurance Trust (MCIT), a joint-powers entity that provides self-insurance and risk-management services to its members, including the counties.

The claims manager for MCIT notified the counties that, because several exclusions applied, MCIT would not provide coverage. The counties appealed the decision to the MCIT board pursuant to the dispute-resolution provision in the MCIT bylaws. Following a hearing, the MCIT board affirmed the denial of coverage.

Between May 1996 and July 2000, the counties proceeded in the litigation with Franklin. The claims were ultimately settled, but resulted in legal fees to the counties in excess of $500,000. The terms of the settlement included a cash payment of $525,000 for the alleged breach of contract and fraud claims along with an agreement by the counties to approve levy requests for support of the Amberfield project through the remaining years of the bond obligations.

The counties then brought this declaratory-judgment and breach-of-contract action in district court, seeking a declaration that MCIT must provide coverage for the claims in the Franklin action. MCIT moved to dismiss, arguing that, because the challenged decision was a quasi-judicial one made by an administrative body, the counties must seek review through certiorari. The district court denied MCIT's motion, concluding that MCIT was not a political subdivision whose decisions were subject to certiorari review and that the court had subject-matter jurisdiction over the claims. This appeal follows.

## ISSUE

Is a joint-powers board, formed under Minn.Stat. § 471.59 (2002) to provide self-insurance and risk-management services to its members, an administrative body whose quasi-judicial decisions are subject to certiorari review?

## ANALYSIS

 A decision by the district court denying a motion to dismiss based on subject-matter jurisdiction is reviewable de novo. *Handicraft Block Ltd. P'ship v. City of Minneapolis,* 611 N.W.2d 16, 19 (Minn.2000). Courts have only limited jurisdiction over quasi-judicial decisions by executive branch bodies due to the separation-of-powers doctrine. *State ex rel. Ging v. Bd. of Educ. of Duluth,* 213 Minn. 550, 570–71, 7 N.W.2d 544, 556 (1942), *overruled in part on other grounds, Foesch v. Indep. Sch. Dist. No. 646,* 300 Minn. 478, 223 N.W.2d 371 (1974). Consequently, "judicial review of the quasi-judicial decisions of administrative bodies, if available, must be invoked by writ of certiorari," absent other adequate methods of review or legal remedy. *Dietz v. Dodge County,* 487 N.W.2d 237, 239 (Minn.1992).

 We first address the counties' argument that certiorari review is precluded because the district court has subject-matter jurisdiction to hear claims under Minn. Stat. ch. 555 (2002), the Uniform Declaratory Judgments Act. A number of prominent cases addressing whether certiorari

review was available were originally brought as declaratory-judgment actions. *See, e.g., Dokmo v. Indep. Sch. Dist. No. 11,* 459 N.W.2d 671, 673 (Minn.1990) (addressing declaratory-judgment action brought by teacher to decide continuing contract-right dispute); *State v. Tokheim,* 611 N.W.2d 375, 377 (Minn.App.2000) (addressing declaratory-judgment action filed by state to determine whether state troopers were entitled to defense or indemnification from state). "Allowing [a party] to maintain a declaratory judgment action to challenge the finality of" a decision reviewable by certiorari "would thwart the policy underlying the requirement of certiorari review" for such cases. *Mowry v. Young,* 565 N.W.2d 717, 720 (Minn.App.1997) (addressing review of termination of a public employee), *review denied* (Minn. Sept. 18, 1997). Therefore, the fact that the counties brought a declaratory-judgment action does not, in itself, resolve the question of whether the decision is a quasi-judicial one by an administrative agency subject to exclusive certiorari review.

We next address the issue that the district court found dispositive—whether MCIT is a political subdivision whose decision, if quasi-judicial, is subject to certiorari review. The rule limiting challenges to quasi-judicial decisions through certiorari has been applied to a "broad array of executive bodies." *Dietz,* 487 N.W.2d at 239 n. 3. Courts have used various terms to describe the entities whose decisions are subject to certiorari review. Some courts refer to "administrative bodies." *See, e.g., United Migrant Opportunity Servs., Inc. v. Dodge County Planning Comm'n,* 636 N.W.2d 813, 814 (Minn.App.2001) (addressing decision by county board of commissioners). Other courts refer to "executive bodies." *See, e.g., Willis v. County of Sherburne,* 555 N.W.2d 277, 282 (Minn. 1996) (referring to counties). Other decisions refer to entities as "quasi-judicial

boards or agencies." *See, e.g., Press v. City of Minneapolis,* 553 N.W.2d 80, 83 (Minn.App.1996) (analyzing decision by Minneapolis Housing Board of Appeals).

The district court rejected MCIT's claim that, merely because it was formed by an agreement of a group of political subdivisions, i.e., the counties, and because it is not an insurance company licensed by the state, it constituted a political subdivision whose decisions were reviewable by certiorari. Instead, the district court concluded that, rather than creating a new political subdivision, the member counties reached a covenant to establish insurance and risk-management services via MCIT. As a result, the court determined that MCIT was not a political subdivision and that the dispute should be resolved in district court rather than through certiorari.

In reviewing the district court's decision, we first analyze the nature of the MCIT organization. Under the joint-powers act, two or more governmental units, including counties, may exercise jointly any power that they each have. Minn.Stat. § 471.59, subd. 1 (2002). They may form a joint-powers board. *Id.,* subd. 11 (2002). Political subdivisions, including counties, may also self-insure. Minn.Stat. § 471.981, subd. 1 (2002); *see* Minn.Stat. § 471.98, subd. 2 (2002) (defining political subdivision to include counties). MCIT was formed as a joint-powers entity to provide self-insurance and risk-management services. Its members include 81 Minnesota counties, 90 soil and water conservation districts, and some private entities. Members can customize their individual insurance coverage by adding endorsements at additional cost.

■ If a separate legal entity is created through the joint-powers act, it is not clear "whether that entity has the attributes of a corporation or partnership, or is simply an

agent acting on behalf of the principal member governmental units." *In re Greater Morrison Sanitary Landfill,* 435 N.W.2d 92, 96 (Minn.App.1989) (addressing whether counties may be held individually liable for closing landfill some years after they had withdrawn from landfill board), *review denied* (Minn. Mar. 29, 1989).

> The precise nature of any one [joint powers] entity * * * must be determined on a case by case basis upon a thorough analysis of the purpose for and responsibilities of the entity.

*Id.*

Several cases have touched on the issue before us. This court has held that review of a MCIT decision concerning an underinsured-motorist claim against a county was properly reviewed by the district court. *Rasmussen v. Sauer,* 597 N.W.2d 328, 332 (Minn.App.1999), *review denied* (Minn. Sept. 14, 1999). In so doing, we noted that MCIT's coverage document resembled a typical automobile-liability insurance policy and that the coverage doctrine contemplated district court review. *Id.* In addressing the argument that the insureds were required first to exhaust administrative remedies, we stated in relevant part:

> The cases requiring review of an administrative agency's quasi-judicial decision by writ of certiorari simply do not apply to this claim for statutorily mandated UIM benefits. Rather, those cases have been limited to executive-branch decisions involving conditional use permits, zoning variances, or termination of public employees. Thus, we decline to limit the Rasmussens' right to sue.

*Id.* (internal citations omitted); *see Kroschel v. City of Afton,* 524 N.W.2d 719, 720–21 (Minn.1994) (without addressing jurisdictional issue, supreme court held that district court properly granted summary judgment on issue of legal fees for a joint trust entity that defended a city).

■ Similarly, in this case, the coverage document resembles an insurance document. For example, the document contains the following provisions, among others:

- coverage provided is for a specific "coverage period."

- it is a "Claims Made Form" and the coverage "is limited generally to liability for only those Claims that are first made against the Covered Party and reported to the Trust while this Coverage Provision is in force."

- it specifically notes that "[t]hese Coverage Provisions contain all the agreements between you and us concerning the coverage afforded."

- it states that insureds should "[r]ead the Coverage Provisions carefully to determine rights, duties and what is and is not covered."

- it states that the Insurance Trust "will pay" sums under certain circumstances.

Coverage for public officials is outlined at section I.C. as follows:

1. *Coverage Agreement*

 a. We will pay on behalf of the Covered Party all monetary Damages which the Participant shall be legally obligated to pay for any civil Claim or Claims first made against it during the Coverage Period because of a Wrongful Act first committed on or after the Retroactive Date shown on the Declaration. * * * We will have the right and duty to defend any Suit seeking those Damages. But:

 (1) The amount we will pay for damages is limited as described in SECTION I.F. LIMITS OF LIABILITY;

(2) We may investigate and settle any Claim or Suit at our discretion; and

(3) Our right and duty to defend end when we have used up the applicable limit of coverage in the payment of judgments or settlements under Coverages A, B or C.

"Covered Parties" are defined as

[y]our elected or appointed officials, officers, directors and members of any boards or commissions, but only with respect to their duties as your officials, officers, directors, or board or commission members.

Further, section V.D. of the agreement specifically envisions district court review of disputes:

Actions Against The Trust

No person or organization has a right under these Coverage Provisions:

1. To join us as a party or otherwise bring us into a Suit asking for Damages from a Covered Party; or

2. To sue us on these Coverage Provisions unless there shall have been full compliance with all of the terms and conditions of these Coverage Provisions. *A person or organization may sue us to recover on an agreed settlement or on a final judgment against a Covered Party obtained after an actual trial;* but we will not be liable for Damages that are not payable under the terms of these Coverage Provisions or that are in ex-

cess of the Trust's applicable Limit of Liability. An agreed settlement means a settlement and release of liability signed by us, the Covered Party and the claimant or the claimant's legal representative.

(Emphasis added.)

We conclude that MCIT resembles an insurance company for purposes of this jurisdiction question. *See* Minn.Stat. § 471.982, subds. 1, 2 (2002) (providing that when self-insurance pool is formed, it is subject to approval by the Commissioner of Commerce and subject to the commissioner's rules). MCIT is not an executive body whose quasi-judicial decision is subject to certiorari review. *See Rasmussen,* 597 N.W.2d at 332 (holding that certiorari review does not apply to claim for underinsured motorist benefits against county that was self-insured through MCIT). Therefore, its decision is properly subject to district court review.

## DECISION

The decision by the district court that it has subject-matter jurisdiction to review the decision by MCIT is affirmed.

**Affirmed.**