## CITY OF CROOKSTON IN POLK COUNTY v. CROOKSTON WATER WORKS, POWER & LIGHT COMPANY.[1]

November 25, 1921.

No. 22,452.

**City of Crookston — authority to contract for supply of water.**
    1. Chapter 12, Sp. Laws of 1879, conferred upon the city of Crookston power to make and establish public pumps, wells, cisterns and hydrants and to provide for water works for the supply of water for its inhabitants for both public and private needs. *Held*, that such provisions vest the municipality with power to enter into contracts with private individuals for the purposes stated.

**Rules of private contract apply to municipality.**
    2. Entering into such contracts and granting a franchise to individuals

[1]Reported in 185 N. W. 380.

does not involve an exercise on the part of the municipality of its legis-
lative or govermental functions as respects the rates and charges to be
paid the grantees for a performance of the contracts, or otherwise, but
only its proprietary powers, and the rules and principles of law ap-
plicable to contracts and transactions between individuals apply thereto.

Action in the district court for Polk county to recover $10,014.54.
Defendant's demurrer to the complaint on the ground that it did not
state facts sufficient to constitute a cause of action was sustained by
Watts, J. From the order sustaining the demurrer the city of Crooks-
ton appealed. Affirmed.

*W. E. Rowe,* for appellant.

*W. P. Murphy* and *Brown & Guesmer,* for respondent.

QUINN, J.

Appeal from an order sustaining a general demurrer to the com-
plaint. The action was brought to recover various sums paid by the
city of Crookston to defendant upon claims for deficiency earnings on
certain water main extensions in the streets of the city, and also to
compel defendant to pay into the city treasury certain license fees upon
its gross earnings from August 1, 1918, to December 31, 1919.

The city was organized under chapter 12, p. 14, Sp. Laws 1879. A
subsequent act of the legislature, approved March 9, 1885, repealed the
act of 1879 and gave the city an entirely new charter, but that act did
not take effect until after the granting of the franchise in question.
The act of 1879 provides that the territory thereby created as the city
of Crookston, shall be a municipal corporation with all the general pow-
ers possessed by municipal corporations at common law, and, in addi-
tion thereto, shall possess the powers hereinafter specifically granted.
The act then provides, in effect, that the common council shall have
power "to make and establish public pounds, pumps, wells, cisterns and
reservoirs, and to provide for the erection of water works for the supply
of water to the inhabitants  *  *  *" (chapter 4, paragraph 11); "to
appropriate money and provide for the payment of the debts and ex-
penses of the city" (chapter 4, paragraph 25); that "all property real
and personal, within the city, except such as may be exempt by the laws

of the state, or by the ordinance of the city, shall be subject to taxation for the support of the city government, and the payment of its debts and liabilities * * *" (chapter 6, § 1); and "that no money shall be appropriated for any purpose whatever except such as are expressly authorized by this act." (Chapter 6, § 2.)

The basis of plaintiff's action is the occupation of its streets by defendant with water mains and connections, and the operation of a water works system in the city under a franchise granted to one Chase on February 25, 1885, and assigned to the defendant. This franchise expired February 25, 1915. At the time of the granting of this franchise the city owned a water works system, with mains and hydrants, which was, under the terms of the franchise, sold and conveyed to Chase, the grantee agreeing to furnish the inhabitants of the city with a supply of water and to establish and maintain hydrants for fire protection at designated locations, for which he was to charge consumers a fixed rate, and for the hydrants the city was to pay a flat annual rate of $100 each, with the provision that the city, within a stated period, should locate three-fourths of a mile of additional mains with one hydrant every 380 feet, and to pay the same rate as for the original hydrants. This franchise further provided: "That the common council may by resolution require the said K. D. Chase, his successors or assigns, to lay additional water mains, erect additional fire hydrants or service pipes in or along any of the streets, avenues, alleys, or public grounds, as they may deem advisable and necessary, but no such requirement shall be made or enforced without first guaranteeing a revenue of at least 8 per cent per annum on the cost of construction and operation of such additional expenditure."

Paragraph 7 of the complaint is as follows:

"That after the passage, approval and adoption of said ordinance of 1885, certain so-called water main extensions were made in said city by the defendant and in respect to which the defendant annually charged to and collected from the plaintiff many thousand dollars for and on account of alleged deficiency in the gross earnings upon and for such water main extensions which charges were made and payments made up to on or about the 1st day of January, 1912; and that although there-

after and during the years 1912, 1913, 1914, 1915, 1916, 1917, up to the 9th day of July, 1918, the said defendant annually charged and presented to the city council of said city for allowance and payment claims for such deficiency earnings upon said water main extensions but the city council disallowed and refused to pay the same; that the aggregate amount of the charges so made and claims so presented by said defendant for such alleged deficiency in gross earnings upon said water main extensions from the period from January 1, 1912, to July 9, 1918, is the sum of thirty thousand seven hundred twenty-two and 66/100 dollars ($30,722.66)."

After the expiration of the 1885 franchise and the disallowance of defendant's claims for deficiency earnings upon the various main extensions from January 1, 1912, to July 9, 1918, the council granted defendant another water works franchise, known as Ordinance No. 176. Section 4 of this franchise provides for the payment by defendant to the city, of an annual license fee upon its gross earnings, and section 14 thereof is as follows:

"In consideration of the agreements herein contained and as a compromise and settlement of the bills heretofore rendered to said city by said company for payment under guaranties of earnings from water main extensions heretofore required by said city under the provisions of the ordinance of 1885, it is agreed that no payments under said former guaranties shall accrue for any period subsequent to August 1, 1918, and that on or before the first day of September, 1918, the amount due under the said guaranties, with interest thereon to the first day of August, 1918, at the rate of six per cent (6%) per annum from the time of installation of such extensions respectively, shall be computed on the same basis as for the guaranties herein provided, that is, on the basis of a guaranty of gross income of fifteen per cent (15%) each year on the cost of installation of the water main extensions; and the total amount of said former guaranties so computed shall be paid by said city to said company with interest at the rate of six per cent (6%) per annum from and after August 1, 1918, and until paid said company may credit said city thereon the amount of license fees herein fixed as such license fees shall become due and payable."

It is alleged in the complaint that, pursuant to the provisions of Ordinance 176, the council and the defendant entered into a pretended settlement of the claims referred to for deficiency of gross earnings on main extensions, in the sum of $7,319.74, which was by the council wrongfully and unlawfully allowed and ordered paid, and that upon October 31, 1918, the sum of $3,819.74 was unlawfully paid to the defendant thereon. It is further alleged that there is due and owing to plaintiff as a license fee from August 1, 1918, to December 31, 1919, as above referred to, the sum of $2,694.80, in all the sum of $10,014.54, for which amount it asks judgment with costs and disbursements.

On July 31, 1906, the city adopted a home rule charter pursuant to the provisions of section 36 of article 4 of the state Constitution, and Ordinance 176 was enacted thereunder, but the provisions of that charter are not pleaded.

The principal contention on behalf of the plaintiff is, that the city had no right or authority to guarantee any alleged deficiency in gross earnings upon such water main extensions; and that the funds of the city so paid were wrongfully converted for private purposes and that such extensions were for the sole benefit of the inhabitants of the city desiring to use defendant's water service.

In adopting its original charter, the city clothed its common council with ample authority to provide for a system of water works to supply its inhabitants with water for corporate and private needs. The validity of the charter is not questioned and its provisions are comprehensive. Acting thereunder the city acquired a plant consisting of a station, equipment, water mains, connections, hydrants, etc. As the city enlarged it became necessary to extend the water facilities. Accordingly the franchise of 1885 was adopted and the plant sold. This franchise fixed the maximum charge for water to private consumers, required the city to pay a stated annual rental for the use of each hydrant, to locate three-fourths of a mile of additional water mains to be installed by the grantee or his assigns within a stated time, with one hydrant each 380 feet, and reserved the right to require further extensions of the mains with hydrants as it became necessary. It also provided that no such requirement should be made or enforced without

first guaranteeing a revenue of at least 8 per cent per annum on the expenditure. Such extensions were so directed and made from time to time and defendant annually presented its claim for deficiency in the earnings of such extensions, which were allowed and paid up to the year 1912, after which they were disallowed and payment refused. When the complaint is read in connection with the two franchises, which were by stipulation made a part thereof, we think it clearly appears that the service from such water main extensions was for the needs of the entire community, as well as for individual consumers; in other words, the extensions were not exclusively for private purposes but for public needs as well, and plaintiff was one of the customers thereof. The provisions of the charter were ample to confer authority on the council to make the contract complained of. Reed v. City of Anoka, 85 Minn. 294, 88 N. W. 981; Anoka Waterworks, etc. Co. v. City of Anoka, 109 Fed. 580; City of Joseph v. Joseph Waterworks Co. 57 Ore. 586, 111 Pac. 864, 112 Pac. 1083; Southern Bell Tel. & Tel. Co. v. City of Mobile, 162 Fed. 523.

It has been held, as a general proposition, that when an extension of the facilities of a public utility is desired and it appears that the revenue to be derived therefrom, at regular rates, will be insufficient to warrant the undertaking, some form of an extension agreement may be made so as to assure the company a fair return for the investment. Boundary Realty Co. v. Hackensack Water Co. P. U. R. 1920 Fed. 1005; Re Cumberland Power Co. P. U. R. 1919E, 966. It was held in Re Hackensack Water Co. P. U. R. 1917E, 106, that a water company may require a guarantee from customers of a reasonable return upon an extension of water mains. It might have been more equitable if the private consumers along the extension had been required to bear their proportionate share of the deficiency, if any there were. However, the city was one of the customers, it required and directed the extensions, and we see no good reason why it might not, through its council, legally enter into a valid settlement and adjustment of the matter. Reed v. City of Anoka, supra. A contract designed merely to provide a gratuity to private individuals would of course be invalid. But the city had agreed to contribute to the deficiency and it was but just

and equitable that it should, as it apparently did, settle its just proportion. Ordinance 176 required the council to adjust the matter. Acting thereunder, that body investigated defendant's claims covering the period of the six years in question and apparently determined the amount which it deemed defendant was entitled to receive and settled the matter accordingly. In these matters the city acted only in its proprietary capacity, and the rules of law applicable to contracts and transactions between individuals apply. We see no legal reason why the arrangement should be disturbed. There is no legal reason suggested why the license fees for a portion of the years 1918 and 1919 might not be applied in payment of the balance so arrived at.

Affirmed.