## G. A. SLOAN v. CITY OF DULUTH.[1]

March 15, 1935.

No. 30,312.

*John B. Richards,* for appellant.
*Bert W. Forbes,* City Attorney, for respondent.

JULIUS J. OLSON, JUSTICE.

Appeal by plaintiff from a judgment wherein he succeeded only in part in getting the relief to which he claimed to be entitled.

Plaintiff is and during all the times herein material has been the owner of certain lots in the city of Duluth. During the years 1923 and 1924 the city completed an extension of gas and water mains in a street upon which plaintiff's property abutted. Assessments were levied upon plaintiff's lots for their prorata share of the cost of the improvement. The assessments so levied were payable in instalments over a period of 15 years. The sections of the applicable ordinance under which the improvement was made read thus:

"After the completion of said extension, whenever any water or gas is served to any property upon said extension, credit shall be

[1] Reported in 259 N. W. 393.

given upon the assessment against the property so served, amounting to one-half of the total receipts for water, and one-third of the total receipts for gas for that year.

"Provided, that the council may at any time previous to January 1 of each year change the proportion of water and gas receipts which may be applied in credit upon the assessments.

"Such assessments shall be deemed entirely discharged, together with the lien thereof, whenever one-half of the total gross receipts from the sale of water, and one-third of the total gross receipts from the sale of gas in said extension, shall equal or exceed for one year the total amount of such assessment."

Plaintiff, claiming that he had been overcharged by the city in respect of annual instalments of assessments collected from him, brought this suit for an accounting and asked that he be given proper credit for such overpayment and that the court cancel and annul all remaining instalments of the assessments, also for such other relief as to the court might appear appropriate. The court found that the city had never given plaintiff credit upon his assessment for receipts of gas and water paid during any of the years subsequent to the levying of the assessment, and that plaintiff had in fact paid to the city amounts in excess of the total justly chargeable to him. The court directed that judgment be entered entirely discharging the lien of all assessments remaining, and forbidding the city from making any further assessments against plaintiff's property on account of the making of the extension, and that plaintiff have costs and disbursements. Plaintiff moved for amended findings to the effect that the city had in fact been overpaid in respect of said assessments in an amount exceeding $200. The court refused to make the requested change, assigning as its reasons therefor (set forth in the memorandum attached to the order) that plaintiff's payments even if made by him under mistake would not justify recovery inasmuch as the city "at all times claimed the right to receive said payments. There being no mutual mistake, a mistake on the part of one party cannot entitle him to recover." Judgment was thereupon entered in conformity with the findings and order of the court, and this appeal promptly followed.

Several assignments of error have been presented, but we think only one question need be considered. It is this: May a municipality, acting in its proprietary capacity and under the circumstances hereinbefore related, exact more than its ordinance permits and successfully resist repayment of such excess to one who has suffered loss thereby in ignorance of the facts?

The defendant relies upon tax cases, *i. e.,* where a taxpayer has paid a tax levied upon his property but the levying or enforcement of which was vulnerable or even perhaps void. The theory of the law in such cases is stated in Falvey v. Board of Co. Commrs. ·of Hennepin County, 76 Minn. 257, 261, 79 N. W. 302, thus:

"To permit a person to ignore the remedies given by statute against illegal real estate taxes, pay them with knowledge of all the facts, and then recover them by suit, would be inconsistent with and subversive of our entire tax law, and, if permitted after judgment, would be a mere evasion of its provisions as to the finality and conclusiveness of the judgment. The taxes for 1895 were not yet delinquent, and hence no proceedings to enforce their collection had been commenced, much less any judgment rendered against the land. The plaintiff's remedy (and it was ample) was to interpose his objection or defense to the tax when proceedings were instituted to obtain judgment."

In Gould v. Board of Co. Commrs. of Hennepin County, 76 Minn. 379, 381, 79 N. W. 303, 530, the court, upon reargument, held that "the rules which apply to actions to recover money paid by one person to another do not apply, to their full extent, to actions to recover from a county, town, or other municipality money in payment of taxes illegally or irregularly assessed or levied," the reason assigned being that "if a party could recover from the public whenever there was some illegal or irregular action on the part of public officers in the assessment or levy of the tax, merely because he was ignorant of such illegality or irregularity at the time he paid the tax, the public finances would be thrown into chaos, and frequently municipalities would be reduced to utter bankruptcy. Municipalities do not guaranty the taxpayers correct action on part of their officers."

In Wheeler v. Board of Co. Commrs. of Hennepin County, 87 Minn. 243, 245, 91 N. W. 890, the proceedings to enforce payment of taxes for the year 1895 had gone to judgment in December, 1897, but no sale had been made thereunder or further steps taken toward enforcement thereof. Plaintiff applied to the county auditor for a statement of his taxes as provided by G. S. 1894, § 1590, in April, 1899. The auditor furnished the statement, and plaintiff paid the amount therein stated to be due, believing it to be correct. As a matter of fact the stated amount exceeded the amount actually due in the sum of $44.30. This court in sustaining plaintiff's right to recover said [87 Minn. 245]:

"It is true that he knew the amount of the judgment as entered, or must be presumed to have known it; but he did not know, nor could he ascertain without examination of the auditor's books, that there had been no sale, as provided by law, and consequently that the judgment bore no interest; and, further, for the same reason, that no penalty or costs had accrued. He could safely presume, when reading the statement and discovering the claimed amount to be in excess of the judgment, that the auditor had performed his duty, that there had been a sale, and that a penalty or costs or interest based thereon had been properly charged against his property. We do not think that when such a payment is made it can be regarded as voluntary, or made without any mistake of fact."

The case of Falvey v. Board of Co. Commrs. of Hennepin County, 76 Minn. 257, 79 N. W. 302, was commented upon by the court and distinguished.

In Oakland Cemetery Assn. v. County of Ramsey, 98 Minn. 404, 406, 108 N. W. 857, 109 N. W. 237, 116 A. S. R. 377, plaintiff was unable to have its deed recorded because taxes, "legal in their inception, but illegally demanded," appeared upon the tax records. In order to have the deed recorded plaintiff paid the taxes under protest. The trial court sustained plaintiff's claim in his suit to recover the taxes so paid. This court affirmed upon the theory that the taxes were paid "under duress and with protest." The opinion states the rule thus [98 Minn. 406]:

"It may be stated as a general proposition that a payment under compulsion of money unlawfully demanded does not conclude the party paying; he by proper protest indicating that he pays by compulsion, and not voluntarily. He may recover it again." Citing State v. Nelson, 41 Minn. 25, 27, 42 N. W. 548, 4 L. R. A. 300.

In Fry v. County of Morrison, 136 Minn. 225, 227, 161 N. W. 511, prior cases are discussed. There the trial court had ordered the county to refund to plaintiff certain illegal ditch assessments included in his tax assignment certificate. The pertinent part of the opinion to the facts in the instant case is stated thus [136 Minn. 227]:

"The plaintiff was under no obligation to pay the taxes subsequent to his assignment certificate. He was not the owner of the land assessed and owed the state no duty. The state encourages a purchaser to pay subsequent taxes and tack them to his certificate. The state thus gets its revenue promptly. The tax certificate holder gets repayment in case of redemption. Under such circumstances it should not be held that the payment of taxes was voluntary so that a refundment cannot be had. It does not appear that the plaintiff knew of the invalidity of the ditch assessments. So far as appears it was without knowledge. We hold that under such circumstances he is entitled to a refundment of subsequent invalid assessments included in taxes which he might properly tack to his certificate."

Other cases having a bearing upon this subject are Heywood v. Northern Assur. Co. 133 Minn. 360, 158 N. W. 632, Ann. Cas. 1918D, 241; Wall v. Borgen, 152 Minn. 106, 188 N. W. 159; Braddock I. Min. Co. v. Erskine, 155 Minn. 70, 192 N. W. 193; In re Application of P. I. Tel. Co. for Refund of Taxes, 156 Minn. 87, 88, 194 N. W. 317; Hunter v. City of Minneapolis, 171 Minn. 309, 312, 213 N. W. 916; Weberling v. Bursell, 180 Minn. 283, 230 N. W. 654; Horn v. City of Minneapolis, 182 Minn. 172, 234 N. W. 289; Warren v. County of Mahnomen, 192 Minn. 464, 257 N. W. 77.

It is difficult to arrive at a definite rule from our cases applicable to the facts in the case before us. But we think the present situa-

tion is one clearly distinguishable from cases involving purely tax questions. "Taxes are pecuniary charges imposed by the legislative power of a state upon persons or property to raise money for public purposes." 6 Dunnell, Minn. Dig. (2 ed. & Supp. 1932) § 9114. Taxation is the means whereby the state procures the revenue for its support. In re Delinquent Real Estate Taxes, 182 Minn. 437, 234 N. W. 691. And their collection is a governmental or sovereign function of the state. State v. Brooks, 183 Minn. 251, 236 N. W. 316. The power of taxation is inherent in the sovereignty, embraces every conceivable subject of taxation, and reposes in the legislature except as limited by the state and federal constitutions. Reed v. Bjornson, 191 Minn. 254, 253 N. W. 102. Obviously, what the city of Duluth held against plaintiff's property was not a tax as that term is understood and generally applied. Rather and only what it held against plaintiff's property was a charge or lien for the purpose of reimbursement of the prorata expense by it paid or incurred in the making of the improvement. Under these circumstances, it should not charge any more than its ordinance permits. In this matter it was acting in its proprietary capacity. Its position cannot be at all different from a situation where plaintiff had contracted upon similar terms with a private party or a public service corporation. By the ordinance the city entered into a contract with the property owner agreeing to give him credit from time to time for a certain portion of the payments as and when by him made for the service provided by the city's business enterprise. It must be assumed that the enterprise was of mutual benefit to both parties. The city laid its gas and water mains to facilitate the use of its water and gas service. Out of the income derived from plaintiff's use thereof it agreed to credit definite amounts from time to time. It should not now, in view of the court's findings, be permitted to say that it had truly and accurately given plaintiff the credits to which he was entitled under terms by it imposed when the improvement was made.

If this suit were between two individuals, based upon the same state of facts, there can be no doubt that an action as for money had and received would lie. The reasoning employed in Sibley v.

County of Pine, 31 Minn. 201, 203, 17 N. W. 337, 338, seems appropriate here:

"The obligation of the county to repay does not depend upon the authority of the county board to collect the money, but arises from the moral obligation, resting upon every person, natural or artificial, to make restitution where they have received without consideration the money of another, which they have no right to retain."

In this case as in Valentine v. City of St. Paul, 34 Minn. 446, 448, 26 N. W. 457, 458, "the city stands in the position of holding in its treasury money collected from the plaintiff which it has no right in equity, good conscience, or common honesty to retain, because the purpose for which it was collected has been completely abandoned. In such circumstances no statute is required to impose upon the city a legal obligation to make restitution."

As to liability quasi contract of a municipal corporation, see Town of Balkan v. Village of Buhl, 158 Minn. 271, 197 N. W. 266. Defendant cites 5 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 7461, which holds that it is "a general rule that money voluntarily paid, with full knowledge of the facts, cannot be recovered back, though the claim on which the payment was made was illegal." Many cases are cited in support thereof. But we do not understand the facts here to be within the rule. The court's memorandum indicates quite the contrary. The credits to which the property owner was entitled under the ordinance were necessarily within the knowledge of the officers of the city having charge of that department. It is not probable that plaintiff would knowingly pay anything in excess of what he was legally required to pay. To so assume is to do violence to the conduct of the ordinarily prudent man under similar circumstances.

Plaintiff on his motion for amended findings asked the court to find that his overpayments amounted to $222.84. The court, as has been hereinbefore noted, found overpayment but refused to find the amount thereof on the ground that this was not a material issue. Plaintiff now asks us to award him judgment in that sum. This we do not think proper upon this record. If it be a fact that the over-

payments are in the amount plaintiff claims, counsel should have no trouble in agreeing thereto. If they do not agree, the trial court will take such further testimony as it may deem necessary to that end.

The judgment is reversed for further proceedings in conformity with the views hereinbefore expressed.

Reversed.