KNUTSON HOTEL CORPORATION v. CITY OF MOORHEAD.

84 N. W. (2d) 626.

August 9, 1957—No. 37,064.

*James E. Garrity,* City Attorney, for appellant.
*Carlsen & Greiner* and *Charles E. Carlsen, Jr.,* for respondent.

MURPHY, JUSTICE.

This is an appeal from an order of the district court denying the defendant's alternative motion for judgment notwithstanding the verdict or for a new trial. The case involves an action by the Knutson Hotel Corporation, operator of the Frederick Martin Hotel of Moorhead, Minnesota, to recover from the city of Moorhead alleged overcharges for use of sewer facilities.

The defendant, city of Moorhead, was authorized by M. S. A. 443.09 to install a system of sewers and a sewage-disposal plant and to adopt an ordinance charging a fair and equitable rate for the use of such facilities. The statute provides that the charges shall be, "as nearly as possible, equitable and in proportion to the service rendered" and that the city may fix the charges "on the basis of water consumed, or on any other equitable basis the governing body may

deem appropriate," which charges may be established as a surcharge on the water bills of consumers in the municipality.

Pursuant to this statute the city of Moorhead adopted Ordinance No. 177 in 1948. The ordinance provided for the establishment of rates and charges for the use and benefit of the sewage-disposal plant. The charges were based on the amount of water furnished to the premises by the city. In August 1951, Ordinance No. 211 was passed amending Ordinance No. 177. Ordinance No. 211 dealt with the fixing of rates and charges for the use and benefit of the sanitary sewerage system. The new ordinance also provided that if it could be shown to the satisfaction of the city engineer that a portion of the water consumed did not and could not enter the sanitary sewerage system, then, upon the approval of the city council, the city engineer was authorized to determine the amount of water consumed which actually did enter the system and then charges were to be based on that amount of water. Both ordinances provided that, if bills for these charges were not paid, the water service to such premises was to be discontinued.

The hotel involved in this case was opened in May 1950. From that time until August 1955, the city billed the hotel each month for sewage disposal and the total amount billed was $12,206.74.

The hotel had an air-conditioning unit which was in operation during the months of June through October each year. The type of air conditioner used by the hotel during the period involved in this suit used a large volume of water in its operation. This water was discharged from the air-conditioning system onto the roof of the hotel, from whence it flowed into the storm sewer.

The storm sewer is distinct from the sanitary sewer in Moorhead. The sanitary sewer flows east through the sanitary system to the disposal plant, for the operation of which the sewerage rate is charged. The storm sewer flows west and discharges directly into the Red River.

The average monthly charge to the hotel for sewage disposal during the months when the air conditioner was not in operation was about $59. The average monthly charge when the air conditioner was in operation was approximately $569. The hotel manager inquired about

the large discrepancy in the rates in 1950, and he was advised that the water from the air conditioner was being discharged into the sanitary sewer system and was flowing through the sewage-disposal plant. There were subsequent negotiations between the city officials and the hotel management in reference to the sewerage charges, but it was not discovered until the summer of 1954 that the water from the air-conditioning plant was probably being discharged into the storm sewer and not into the sanitary sewer. At that time the Public Service Commission of Moorhead offered to reduce by 50 percent the sewerage rate for the water being used by the air conditioner if the hotel would install at its own expense a separate water meter to measure the amount of water used in the air-conditioning system. The hotel refused this offer. At about this time the hotel was also warned that, if it refused to pay the sewage-disposal charges, its water service would be terminated. It was not until the summer of 1955 that it was definitely proven that the water from the air conditioner did in fact flow into the storm sewer.

The plaintiff brought suit to recover the amount of money it paid as sewerage charges during the period of June 1950 to August 10, 1955, which was in fact attributable to water which was used in its air-conditioning plant and therefore never entered the sanitary sewer system. The plaintiff also sought to recover the sum of $150 which it had been forced to pay for the repairs to a broken water meter. The jury returned a verdict for the plaintiff in the amount of $4,293.07. The portion of the verdict awarding $150 for the repairs to the water meter is not contested by the defendant.

■ The defendant, city of Moorhead, claims that this suit constitutes a collateral attack upon a rate structure and therefore cannot be maintained by an individual user. See, St. Paul Book & Stationery Co. v. St. Paul Gaslight Co. 130 Minn. 71, 153 N. W. 262, L. R. A. 1918A, 384. The plaintiff does not claim that the rates are unreasonable. The crux of the plaintiff's claim is that the city was not authorized to apply those rates to water which never entered the sanitary sewer system. The ordinances establishing the rates by their own terms are concerned with use and benefits of the sanitary sewer system and the sewage-disposal plant. There is no ordinance authorizing the imposition of a charge for water flowing through the storm sewer. The jury

found that the pipe through which this water flowed was in fact a storm sewer and not a part of the sanitary sewer system.[1]

This suit is therefore, as the plaintiff claims, one to recover a payment made for a service which was not received. The plaintiff does not question the reasonableness of the rate but rather the application of the rate to something unconnected with the purpose for which the rate was established. The plaintiff's position is that the imposition of the charges here involved was not authorized by the ordinances if the pipe through which the water flowed to the river was not a part of the sanitary sewer system, and that position we sustain. The jury's finding, well supported by the evidence, was that the pipe in question was a storm sewer and not part of the sanitary sewer system. Therefore, a user of the service may maintain an action to recover the amount unlawfully charged. Cf. Anderson v. St. Paul City Ry. Co. 152 Minn. 213, 216, 188 N. W. 286, 288.

■ We held in Valentine v. City of St. Paul, 34 Minn. 446, 26 N. W. 457, that, when the purpose for which money was collected is abandoned, the city stands in the position of holding money which it has no right in equity, good conscience, or common honesty to retain, and, therefore, it must make restitution. The same principle

---

[1]The finding of fact by the jury that the overflow from the air-conditioning plant went into the storm sewer, and not into the sewage-disposal system, is implicit in the verdict. That issue was clearly presented to the jury by the instructions of the court, a part of which follows:

"* * * You must determine whether the twenty-four inch auxiliary sewer is a storm sewer as plaintiff contends or a part of the sanitary sewer system.

"* * * There is no evidence of record of any ordinance or established rate other than that pertaining to the discharge of sewage or waste directly or indirectly into the sanitary sewer system. If the twenty-four inch or auxiliary sewer is a storm sewer and not a part of the city's sanitary sewer system, then in the absence of an ordinance and rate there can be no charge for the service made available to plaintiff and in that event there was no obligation because there was no contract. If the service to plaintiff was one for which the city had enacted no ordinance to establish a rate, then plaintiff should not have been billed for such service. If there was no agreement to pay for that service, then plaintiff is entitled to recover back the amount so paid."

applies here where the city of Moorhead has collected a large sum of money to defray the cost of its sewerage system and the occasion of the exaction has nothing whatsoever to do with the sewage-disposal plant or the sanitary sewer system. In Sibley v. County of Pine, 31 Minn. 201, 203, 17 N. W. 337, 338, we held that:

"* * * The obligation of the county to repay does not depend upon the authority of the county board to collect the money, but arises from the moral obligation, resting upon every person, natural or artificial, to make restitution where they have received without consideration the money of another, which they have no right to retain."

See, also, Town of Balkan v. Village of Buhl, 158 Minn. 271, 274, 197 N. W. 266, 267, 35 A. L. R. 470, 473; Sloan v. City of Duluth, 194 Minn. 48, 54, 259 N. W. 393, 396.

■ The defendant, city of Moorhead, contends that, even if the imposition of the charges were illegal, the plaintiff still cannot recover because the payments were voluntarily made. These payments were not made voluntarily. Both of the applicable ordinances contained provisions that, if the sewage-disposal charges were not paid, the water was to be turned off. Also, when the plaintiff threatened to refuse to pay the bills, a member of the Public Service Commission told the hotel manager that the water would be turned off if the hotel did not pay the bills. This constitutes duress and makes the payments involuntary. Panton v. Duluth Gas & Water Co. 50 Minn. 175, 52 N. W. 527. The hotel should not be placed in the position of having to choose between being deprived of the use of city water until it can assert its legal rights or foregoing any remedy to recover illegally exacted charges.

■ The defendant, city of Moorhead, also asserts that the plaintiff is not entitled to relief in the courts because it had not exhausted its administrative remedies. The first ordinance did not provide any administrative remedy at all. The new ordinance provided a means to obtain administrative relief only for the rate to be charged in the future. The plaintiff did not find out definitely that the water was flowing directly into the Red River until the summer of 1955. Thus, in order to obtain a refund for the overcharges involved in this case, the only alternative which the plaintiff had was to bring suit. In Starkweather v.

Blair, 245 Minn. 371, 395, 71 N. W. (2d) 869, 884, we stated:

"* * * Ordinarily, where nothing can be accomplished by resort to administrative remedies, the doctrine of exhaustion of administrative remedies does not apply."

See, also, Davis, Administrative Law, § 189.

■ The defendant, city of Moorhead, also claims that the trial court erred in allowing plaintiff's exhibit 10 to be received as evidence. The exhibit is a plat of the city engineer's department showing the sewer in question in this case and classifying it as a storm sewer. It is claimed that this was received without proper foundation because the person who prepared the plat did not testify as to its authenticity. This plat was in the files of the city and it was the only plat which showed this particular sewer line. The city engineer did not question its authenticity when he testified concerning it. The sufficiency of the verification of an official plat is within the discretion of the trial court (Moose v. Vesey, 225 Minn. 64, 29 N. W. [2d] 649), and the trial court did not abuse its discretion in this case. M. S. A. 599.14 provides that such plats made by the engineering department of a municipality shall be prima facie evidence of the correctness of the facts shown and statements made therein.

In light of the foregoing, the remainder of defendant's assignments of error do not require discussion.

Order affirmed.