**COUNTY OF WASHINGTON,**
**Respondent,**

v.

**CITY OF OAK PARK HEIGHTS,**
**Appellant.**

**No. A11–0067.**

Supreme Court of Minnesota.

Aug. 8, 2012.

Peter Orput, Washington County Attorney, George Kuprian, Assistant County Attorney, Stillwater, MN, for respondent.

Pierre N. Regnier, Jessica E. Schwie, Jardine, Logan & O'Brien, P.L.L.P., Lake Elmo, MN, for appellant.

Susan L. Naughton, Saint Paul, MN, for amicus curiae League of Minnesota Cities.

## OPINION

DIETZEN, Justice.

This case requires us to decide whether certiorari review under Minn.Stat. ch. 606 (2010), is the exclusive method for reviewing a city council's denial of a request for a refund of an alleged overpayment for sewer and water services. Respondent Washington County (County) filed a claim for reimbursement with appellant City of Oak Park Heights (City), alleging that the City had overcharged the County for sewer and water services. Following consideration at a City Council meeting, the City adopted findings and conclusions, and issued an order denying the County's claim. Subsequently, the County sued the City in district court, and the City moved for summary judgment, asserting that review of its decision was limited to certiorari review under Minn.Stat. ch. 606 and that the County's failure to bring a timely certiorari petition deprived the district court of subject matter jurisdiction. The district court denied the motion, and the court of appeals affirmed in a published decision. We granted the City's petition for review. We conclude that the City's decision to deny the refund is a quasi-judicial decision, and therefore the exclusive method for reviewing the City's decision was through a writ of certiorari under Minn.Stat. ch. 606. Because the district court lacked subject matter jurisdiction to hear the County's claim, we reverse the court of appeals.

The material facts relevant to the issue of the district court's subject matter jurisdiction are undisputed. The City provides sewer and water services to the Washington County Law Enforcement Center. During the relevant time period, water usage at the Center was monitored through a combination of seven water meters. The City charged the County for services determined through meter readings conducted by County employees. During a sales and use tax audit by the Minnesota Department of Revenue, the County initiated an investigation into the City's sewer and water charges. Pursuant to its investigation, the County concluded that numerous errors in its employees' reading of the meters, as well as discrepancies in reporting the meter readings, had resulted in the City overcharging the County for sewer and water services.

A written City policy adopted by the City Council establishes a three-part procedure for appealing utility charges. First, if a customer believes that "charges for utility accounts have been improperly assessed," they "shall contact the Accountant to determine if staff may handle the problem." In the event that the "Accountant cannot resolve the appeal, the customer shall communicate the appeal to the City in writing." The policy contains a number of requirements specifying the contents of such a written appeal. Finally, "[i]f the customer is not satisfied with the response from the written appeal, he may request that the matter be placed on the agenda and discussed by the City Council at a formal meeting." The policy further provides that "[t]he City Council shall have the final determination on appeals." [1]

1. There is no contention in this case that the County was unaware of the City's policy or failed to comply with the policy's procedural requirements.

Following the audit, the County notified the City that the County had been overcharged for sewer and water services and requested a refund, in compliance with the City's policy for challenging utility charges. In May 2009 the City Finance and Utility Department denied the County's request for reimbursement. The County then filed an appeal with the City Council.

In September 2009 the County presented its reimbursement claim at a City Council meeting. The County offered evidence in support of its claim and requested reimbursement in the amount of $114,262. In October 2009 the City Council again considered the appeal at a public meeting. Subsequently, the City Council adopted a resolution containing findings and conclusions, and issued an order denying the County's appeal. The City Council concluded that "the County has not supplied the City with reasonable documented evidence that indicates in any regard that the meter readings implemented by the County staff were in error, or precipitated an error in billing when reported to City Staff."

Subsequently, the County brought suit against the City in district court, asserting a cause of action for unjust enrichment and seeking reimbursement of the amount allegedly overcharged by the City. Both parties filed motions for summary judgment. The County argued that summary judgment was appropriate because the "only issue [wa]s that the City received money for services it did not provide." The City argued that the district court lacked subject matter jurisdiction over the action on the ground that the City Council's decision to deny the County's request for reimbursement was quasi-judicial, and that review of its decision was therefore limited to a writ of certiorari before the Minnesota Court of Appeals pursuant to Minn.Stat. § 606.01.

The district court denied both motions for summary judgment. The court determined that in providing sewer and water services, the City had acted in a proprietary capacity. Because the City was "acting in the capacity of a private corporation, not a governmental entity," the court concluded that "its actions [were] not quasi-judicial, and therefore jurisdiction of this matter lies properly with the court." The City appealed the denial of summary judgment based on subject matter jurisdiction.

The court of appeals affirmed, concluding that the district court had subject matter jurisdiction over the County's claim. *Cnty. of Washington v. City of Oak Park Heights*, 802 N.W.2d 767 (Minn.App.2011). The court of appeals first determined that the City's provision of sewer and water services was a proprietary activity "because the city voluntarily engage[d] 'in the same business which, when conducted by private persons, is operated for profit.'" *Id.* at 769 (quoting *Keever v. City of Mankato*, 113 Minn. 55, 61, 129 N.W. 158, 159 (1910)). Because in denying the request for reimbursement the City was "act[ing] as any other business, with the same rights and responsibilities," the court of appeals reasoned that the City "cannot reasonably be viewed as engaging in governmental conduct," and that the City's decision to deny reimbursement was not subject to review by a writ of certiorari. *Id.* at 770. Therefore, the court of appeals concluded that the district court had subject matter jurisdiction. *Id.* at 771.

## I.

The City argues the district court erred in denying the City's motion for summary judgment and concluding that the court had subject matter jurisdiction to consider the County's overpayment claim. According to the City, certiorari review under Minn.Stat. § 606.01 is the exclusive method for review of a city council's quasi-

judicial decision denying a refund for sewer and water charges.

 We review a district court's denial of summary judgment de novo. *See Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC,* 790 N.W.2d 167, 170 (Minn.2010). On review, "our task is to determine whether genuine issues of material fact exist, and whether the district court correctly applied the law." *Savela v. City of Duluth,* 806 N.W.2d 793, 796 (Minn.2011).

 Subject matter jurisdiction is the authority of the court to hear the type of dispute at issue and to grant the type of relief sought. *Seehus v. Bor–Son Const., Inc.,* 783 N.W.2d 144, 147 (Minn.2010). A district court's denial of summary judgment is appealable when the motion is based on the court's alleged lack of subject matter jurisdiction. Minn. R. Civ.App. P. 103.03 advisory comm. cmt.—1998 amendment; *see McGowan v. Our Savior's Lutheran Church,* 527 N.W.2d 830, 833 (Minn.1995). Whether a court has jurisdiction is a question of law that we review de novo. *State v. Ali,* 806 N.W.2d 45, 51 (Minn.2011).

 When a party seeks review of a municipal decision, the reviewing court has subject matter jurisdiction, provided that the party challenging the decision timely seeks relief in the proper manner and forum. *See Tischer v. Hous. & Redev. Auth. of Cambridge,* 693 N.W.2d 426, 429 (Minn.2005). The question here is whether the proper method to seek review of the

City's decision was by filing an action in the district court or seeking certiorari review in the court of appeals. If a writ of certiorari filed under Minn.Stat. ch. 606[2] with the court of appeals is the exclusive method by which to challenge a municipality's decision, then the district court lacks subject matter jurisdiction to hear the case. *See Dokmo v. Indep. Sch. Dist. No. 11,* 459 N.W.2d 671, 677–78 (Minn.1990) (concluding that where the writ of certiorari was the appropriate method to seek review, the district court lacked subject matter jurisdiction to decide a declaratory judgment action); *see also* Minn.Stat. § 606.01 (stating that a party must apply to the court of appeals for a writ of certiorari "within 60 days after the party applying for such writ shall have received due notice of the proceeding sought to be reviewed"). Therefore, if we determine that a writ of certiorari was the exclusive method by which to review the City Council's decision, the district court in this case was without subject matter jurisdiction to hear the County's unjust enrichment claim.

 The limited scope of judicial review of municipal decisions is predicated on the separation of powers clause in the Minnesota Constitution. Minn. Const. art. 3, § 1; *cf. In re Haymes,* 444 N.W.2d 257, 258 (Minn.1989) (explaining that judicial review of statewide executive agencies is limited by the separation of powers). The decisions of municipal bodies entail the exercise of executive powers which courts, as judicial bodies, are not constitutionally permitted to exercise. *See Sellin*

---

**2.** Minnesota Statutes chapter 606 does not enumerate the types of actions that may be reviewed through a writ of certiorari, but does provide:

> No writ of certiorari shall be issued, to correct any proceeding, unless such writ shall be issued within 60 days after the party applying for such writ shall have received due notice of the proceeding sought

to be reviewed thereby. The party shall apply to the Court of Appeals for the writ. Minn.Stat. § 606.01. The chapter also allows for the recovery of costs and defines the time for service of the writ on an adverse party. *See* Minn.Stat. §§ 606.04, .02. Finally, chapter 606 provides that certiorari review of the decision of an administrative agency with statewide jurisdiction "is a matter of right." Minn.Stat. § 606.06.

*v. City of Duluth,* 248 Minn. 333, 337, 80 N.W.2d 67, 70 (1957) (explaining that "a particular act may contain certain elements of what is ordinarily considered a judicial function and yet constitute primarily a function which may not be exercised by the judicial branch of the government"). To prevent the judiciary from impermissibly exercising executive powers, "[c]onstitutional principles of separate governmental powers require that the judiciary refrain from a de novo review of administrative decisions." *Dokmo,* 459 N.W.2d at 674.

▮▮▮ In determining the proper forum in a given case, we have consistently distinguished between a municipality's legislative and quasi-judicial decisions. *See, e.g., Interstate Power Co. v. Nobles Cnty. Bd. of Comm'rs,* 617 N.W.2d 566, 573–74 (Minn.2000). Legislative decisions "affect the rights of the public generally, unlike quasi-judicial acts which affect the rights of a few individuals analogous to the way they are affected by court proceedings." *Id.* at 574; *see also State by Rochester Ass'n of Neighborhoods v. City of Rochester,* 268 N.W.2d 885, 888 (Minn.1978). Typically, decisions by local government bodies that are legislative in nature are not subject to certiorari review. Instead, parties challenging a municipality's legislative decisions must first litigate the question of their validity in district court. *Dead Lake Ass'n, Inc. v. Otter Tail Cnty.,* 695 N.W.2d 129, 134 (Minn.2005).

▮▮▮ In contrast, the quasi-judicial decisions of a municipality are reviewable only by certiorari. We have long held that, absent a right of review provided by statute or appellate rules, certiorari is the exclusive method "to review the proceedings of municipal boards when their proceedings are judicial or quasi-judicial." *State v. Bd. of Pub. Works of City of Red Wing,* 134 Minn. 204, 205, 158 N.W. 977,

977 (1916); *see also Dead Lake Ass'n, Inc.,* 695 N.W.2d at 134; *Haymes,* 444 N.W.2d at 259 ("Where no right of discretionary review has been provided by statute or appellate rules for the quasi-judicial decision of an administrative agency or an administrative law judge, an aggrieved party has the common law right to petition for a writ of certiorari pursuant to Minn. R. Civ.App. P. 120 and Minn.Stat. § 606.01."); *State ex rel. Bd. of Comm'rs of Saint Louis Cnty. v. Dunn,* 86 Minn. 301, 303, 90 N.W. 772, 773 (1902) (explaining that in the absence of an "appeal or other legal remedy being provided," review by certiorari is appropriate for "all questions of law in judicial or quasi judicial proceedings of inferior tribunals, involving the merits of a controversy, and affecting the substantial legal rights of the parties").

We have consistently limited review of quasi-judicial decisions of cities and counties to certiorari review under chapter 606 unless judicial review is otherwise expressly authorized by statute. *See, e.g., Haymes,* 444 N.W.2d at 259. We have applied this rule most frequently in the employment context. *See Willis v. Cnty. of Sherburne,* 555 N.W.2d 277, 282 (Minn. 1996); *Dietz v. Dodge Cnty.,* 487 N.W.2d 237, 237 (Minn.1992) (holding that "a petition for a writ of certiorari provides the exclusive means by which an employee can secure judicial review of the county's employment termination decision"); *Bahr v. City of Litchfield,* 420 N.W.2d 604, 606–08 (Minn.1988) (concluding that certiorari was the appropriate method to review a police civil service commission's hiring decisions). When a statutory right to review a municipal body's quasi-judicial decision is lacking, we have concluded that certiorari is an appropriate, or the exclusive, method to seek judicial review. We have reached this conclusion in a number of areas, including the designation of buildings for heritage preservation,[3] establishment and

---

3. *Handicraft Block Ltd. P'ship v. City of Min-* *neapolis,* 611 N.W.2d 16, 20–21 (Minn.2000)

assessment of sewage costs,[4] denial of a liquor license,[5] school board classification of teachers,[6] vacation of public streets,[7] assessing damages for the laying of streets or destruction of buildings,[8] and certain county zoning decisions.[9]

Applying these principles, the City's denial of the County's sewer and water reimbursement claim is subject to certiorari review if it was a quasi-judicial decision. Thus, we must examine whether the City Council's decision was quasi-judicial.

## II.

The County argues that the City's denial of its refund claim is not a quasi-judicial decision, and that certiorari review under Minn.Stat. ch. 606 is not applicable. The County contends that its claim is one for unjust enrichment, and therefore was properly brought in the district court. According to the County, its claim concerns "money the City wrongly holds" and has nothing to do with "a disputed bill" or the City's decision regarding the requested reimbursement.

■ We have articulated three factors that must be present to find that a municipality was acting in a quasi-judicial capacity: "(1) investigation into a disputed claim and weighing of evidentiary facts; (2) application of those facts to a prescribed standard; and (3) a binding decision regarding the disputed claim." *Minn. Ctr. for Envtl. Advocacy v. Metro. Council (MCEA)*, 587 N.W.2d 838, 842 (Minn. 1999).

■ The County does not dispute that the City Council's decision involved investigation into the County's disputed claim for reimbursement of water and sewer charges. *See Handicraft Block Ltd. P'ship v. City of Minneapolis*, 611 N.W.2d 16, 21 (Minn.2000). The City Council made a decision directed at the "particular interests" of the County, and was not "making a decision bearing on an open class of persons and properties." *Id.* at 21. Moreover, the City Council adopted findings of fact and conclusions of law that summarized and weighed the evidence presented, assigned credibility to that evidence, and denied the refund based upon its review and consideration of the evidence. *See id.* Therefore, we conclude that the City Council's decision satisfied the first factor of the quasi-judicial test.

(concluding that certiorari was the appropriate means by which to review a City's designation of buildings for heritage preservation).

4. *City of Shorewood v. Metro. Waste Control Comm'n*, 533 N.W.2d 402, 404 (Minn.1995) (concluding that certiorari is the exclusive mechanism to review a waste control commission's calculation, adjustment, and assessment of estimated sewage costs).

5. *Country Liquors, Inc. v. City Council of Minneapolis*, 264 N.W.2d 821, 823 (Minn.1978) (reviewing a city council's denial of a liquor license on certiorari).

6. *Foesch v. Indep. Sch. Dist. No. 646*, 300 Minn. 478, 481, 223 N.W.2d 371, 373 (1974) (reviewing a school board's classification of teachers on writ of certiorari).

7. *Beck v. Council of Saint Paul*, 235 Minn. 56, 58–59, 50 N.W.2d 81, 82 (1951) (reviewing a city council's decision to vacate a street through a writ of certiorari).

8. *In re Wilson*, 32 Minn. 145, 151, 19 N.W. 723, 726 (1884) (providing "instances of acts of municipal officers which have been held judicial, and hence directly subject to review on certiorari: Laying out a street or highway across private property, and assessing the owner's damages therefor ... assessing damages for the destruction of buildings to prevent the spread of fire; determining contested election cases").

9. *Dead Lake Ass'n, Inc.*, 695 N.W.2d at 134 (explaining that the writ of certiorari is the exclusive method to review a county's decisions with respect to granting conditional use permits).

▪■ The second factor examines the application of the facts to a prescribed standard. *MCEA*, 587 N.W.2d at 843. In *Handicraft* we concluded that a city's decision applied facts to a prescribed standard when the city's guidelines "circumscribed its ability to designate any building for heritage preservation that did not meet one of the four listed criteria." 611 N.W.2d at 23. These criteria included, for example, determining whether particular structures were "of an architectural type inherently valuable for study" or "associated with the lives of historic personages [or] important events." *Id.* at 23 n. 3. We determined that the standards "provide[d] the framework for the facts the City investigates and findings ·the City makes regarding the property." *Id.* at 23; *see also VanLandschoot v. City of Mendota Heights*, 336 N.W.2d 503, 507 n. 3 (Minn. 1983) (discussing a quasi-judicial denial of a variance pursuant to an ordinance that required a city council to determine that the proposed variance would not "endanger the public safety," "in any other way impair health, safety, comfort, morals," or "in any other respect be contrary to the intent of this Ordinance").

In this case, the City Council applied the reasonableness standard prescribed by statute to determine whether the County was entitled to a reimbursement of sewer and water payments. A municipality has statutory authority to provide sewer and water services. *See* Minn.Stat. §§ 412.321, 444.075 (2010). Specifically, the statutory scheme provides that the City "may impose just and equitable charges for the use and for the availability" of the services, ensuring that "charges made for service rendered shall be as nearly as possible proportionate to the cost of furnishing the service." Minn.Stat. § 444.075, subd. 3. Moreover, the statutes authorize the City to fix sewer charges "on the basis of water consumed." *Id.*, subd. 3a(1). The City Council concluded that the charges to the County were based on actual use of sewer and water services and that the charges imposed were reasonable. The City Council noted that the County had not provided evidence that "the meter readings implemented by the County staff were in error." We therefore conclude that the City Council's decision satisfies the second factor of the quasi-judicial test.

■ The third factor examines whether the municipality rendered a binding decision regarding the disputed claim. *See MCEA*, 587 N.W.2d at 842. The County relies on our decision in *Meath v. Harmful Substance Compensation Board*, 550 N.W.2d 275 (Minn.1996), to argue that the City's policy was "no more than a settlement protocol,"·that the County was not required to comply with the appeal policy, and therefore that the City Council's decision was not binding. In *Meath* we found that the board's decision was not quasi-judicial because the Harmful Substance Compensation Board's determination of compensation "simply afforded claimants an alternative procedure for procuring compensation." *Id.* at 276. Because the claimants were not required to have compensation determined by the board and were allowed under the statute to bring an action in district court for the same injury, we determined that the board's decision was not quasi-judicial. *Id.* at 275–76.

The County's reliance on *Meath* is misplaced. Unlike *Meath*, the City's policy in this case indicates that the appeal process for challenging utility charges is mandatory; specifically, the policy states that "the following process *shall* be utilized to handle appeals" and that "[t]he City Council *shall* have the final determination on appeals." (Emphasis added). Moreover, the City had the authority to adopt such an appeal policy and render binding decisions with respect to reimbursements under Minnesota law and the City's Ordinances.

*See* Minn.Stat. § 412.321, subd. 1 (2010) (stating that "the council . . . shall make *all necessary rules and regulations* for the protection, maintenance, operation, extension, and improvement [of the utility] and for the sale of its utility products" (emphasis added)); Oak Park Heights, Minn., Ordinances, §§ 1001.01, .07 (2009) (providing that "[t]he City Council shall have responsibility for the management, maintenance, care, and operation of the sewer and water systems of the City" and vesting the City Council with authority to promulgate rules, regulations, and rates with respect to the sewer and water systems and with regard to billing). It is undisputed that the appeal policy was adopted and applicable at the time of this dispute. Therefore, we conclude that the City Council's decision in this case was quasi-judicial under our three-factor test.

The County further relies on *Willis v. County of Sherburne*, 555 N.W.2d 277 (Minn.1996), to argue that an unjust enrichment claim is not subject to certiorari review. In *Willis*, an employee challenged the county's decision to terminate his employment in district court, and alleged that his termination was the result of defamatory statements by other county employees. *Id.* at 278. We concluded that certiorari was the exclusive method for reviewing the termination decision, regardless of whether the plaintiff framed the claim as one for wrongful termination or one for breach of contract. *Id.* at 280, 282. But we determined that the district court action was the appropriate forum for the plaintiff to bring his defamation claim. *Id.* at 282–83. We reasoned that the inquiry into what the county board knew about the truth or falsity of the allegedly defamatory statements before publishing them to a third party would "not involve any inquiry into the county board's discretionary decision to terminate Willis," and therefore was not subject to certiorari review. *Id.* We concluded that the appropriate inquiry

was to examine the underlying claim, and determine whether the outcome of the claim depended upon the validity of the municipality's quasi-judicial decision. *Id.* When the underlying basis of the claim requires review of a municipality's quasi-judicial decision to determine its validity, the exclusive method of review is by certiorari under chapter 606. A party cannot avoid certiorari review of a municipality's quasi-judicial decision by employing creative pleading. *See Willis*, 555 N.W.2d at 280 (determining that certiorari should not depend upon whether "the claimant *calls* it an action for wrongful discharge" or "*calls* the action one for breach of contract" if the underlying claim requires a court to review a municipality's quasi-judicial termination decision).

Accordingly, we conclude that the City's decision to deny the claim for alleged overpayment of sewer and water charges assessed against the County was a quasi-judicial decision. The City's decision not to provide reimbursement falls within the City's discretionary authority to provide sewer and water services and assess charges that are reasonable and based on usage. Moreover, the outcome of the County's claim clearly depends on the validity of the City Council's decision to deny a refund for sewer and water charges. Consequently, certiorari review under Minn.Stat. ch. 606 provides the exclusive method for review of the decision.

### III.

The County, however, urges our court to adopt a different approach to certiorari review for this type of case. Specifically, the County urges us to adopt the proprietary-governmental conduct distinction to determine whether a City's quasi-judicial decisions are subject to certiorari review. The County argues that the subject matter of the City Council's decision involved a

proprietary enterprise, and therefore should not be subject to certiorari review. Essentially, the County urges us to abandon the quasi-judicial versus legislative approach in favor of the proprietary-governmental conduct dichotomy.

Originally, the proprietary-governmental conduct dichotomy arose in the context of governmental immunity. *See Snider v. City of Saint Paul*, 51 Minn. 466, 471–73, 53 N.W. 763, 763–64 (1892), *overruled in part on other grounds by Spanel v. Mounds View Sch. Dist. No. 621*, 264 Minn. 279, 118 N.W.2d 795 (1962). The dichotomy was developed by the judiciary to relieve plaintiffs from the harsh results of governmental immunity for tort and contract liability when the government was acting in a proprietary capacity, *see Spanel*, 264 Minn. at 290–91, 118 N.W.2d at 802, but the dichotomy was later abrogated by statute. Minn.Stat. § 3.736, subd. 1 (2010) (state); Minn.Stat. § 466.02 (2010) (municipal); *see also Imlay v. City of Lake Crystal*, 453 N.W.2d 326, 330 (Minn.1990); 18 Eugene McQuillin, *The Law of Municipal Corporations* § 53.02.10, at 132 (3d ed. 1993) ("To mitigate the harshness of sovereign immunity, the judiciary and state legislatures developed exceptions to the rule. The major exception was for harm resulting from a municipality's performance of its 'proprietary' or 'corporate' ... functions.").

The proprietary-governmental conduct dichotomy has fallen out of favor as courts and legislatures have abolished governmental immunity. *See, e.g.*, Minn.Stat. § 466.02 (stating that "every municipality is subject to liability for its torts ... whether arising out of a governmental or proprietary function"); Restatement (Second) of Torts § 895C cmt. e (1979) (noting that the classification between proprietary and governmental conduct has largely been abandoned because "[t]he classification of particular functions as one or the other proved to be so difficult and uncertain, and the subject of so much disagreement that there was little uniformity in the decisions"). We have maintained the dichotomy in a few discrete areas, such as determining liability for costs and disbursements. *Lund v. Comm'r of Pub. Safety*, 783 N.W.2d 142, 143 (Minn.2010) (noting that the taxing of costs and disbursements stems from sovereign immunity concerns). But we have declined to apply the dichotomy in other areas. *See, e.g., Imlay*, 453 N.W.2d at 330 (declining to apply the governmental-proprietary dichotomy to considerations of joint and several liability, explaining that "we do not wish to reinstate this troublesome dichotomy"); *Fischer v. City of Sauk Rapids*, 325 N.W.2d 816, 819 (Minn.1982) (declining to adopt the dichotomy in adverse possession law because to do so "would overturn a longstanding body of law"); *Mesaba Aviation Div. of Halvorson of Duluth, Inc. v. Cnty. of Itasca*, 258 N.W.2d 877, 880 (Minn.1977) (rejecting the dichotomy in determining the applicability of equitable estoppel).

Nevertheless, the County urges us to follow the court of appeals and determine that the appropriate method of review of a municipal decision depends on whether the government action is proprietary or governmental. The County relies primarily on *City of Crookston v. Crookston Waterworks, Power & Light Co.*, 150 Minn. 347, 185 N.W. 380 (1921), and *Sloan v. City of Duluth*, 194 Minn. 48, 259 N.W. 393 (1935), in support of its contention that the proprietary nature of the City's provision of water and sewer services allows the City Council's decision to be challenged through an action in district court.

In *Crookston*, the city brought an action in district court to recover sums paid by the city to the defendant, who was the private operator of the city's waterworks

system. 150 Minn. at 348, 185 N.W. at 380. The city had contracted with the defendant, promising that if the waterworks did not yield a specified profit, the city would pay the deficiency. *Id.* at 349, 185 N.W. at 381. The city alleged that it "had no right or authority to guarantee any alleged deficiency" and that the funds paid by the city "were wrongfully converted for private purposes." *Id.* at 351, 185 N.W. at 381. In determining that the city had failed to state a claim, we stated that the arrangement between the city and the defendant was a valid exercise of the city's authority and that "[i]n these matters the city acted only in its proprietary capacity." *Id.* at 353, 185 N.W. at 382.

Similarly in *Sloan,* the city levied assessments against the plaintiff's property for his pro rata share of the costs of extending water mains. 194 Minn. at 48, 259 N.W. at 394. An ordinance provided that the assessments would be discharged when the plaintiff's payment for water and gas services equaled the amount of the assessment. *Id.* at 49, 259 N.W. at 394. The plaintiff sued in district court because the city failed to give credit against the assessments for payments he made. *Id.* at 49, 259 N.W. at 394. We framed the issue as whether "a municipality, acting in its proprietary capacity ... [may] exact more than its ordinance permits and successfully resist repayment of such excess." *Id.* at 50, 259 N.W. at 394. We found that the city was "acting in its proprietary capacity" and that it lacked the authority to charge more than the ordinance governing assessments permitted. *Id.* at 53, 259 N.W. at 396.

The County correctly points out that the plaintiffs in both *Crookston* and *Sloan* brought actions in district court. But both cases are easily distinguishable because the mechanism for judicial review of a municipal decision was not raised or addressed by our court in either case. More-

over, the cases in which we have allowed judicial review in the district court of municipal decisions made in a proprietary context have been cases in which there was no administrative review available to the claimant. *See, e.g., Knutson Hotel Corp. v. City of Moorhead,* 250 Minn. 392, 393, 397, 84 N.W.2d 626, 627, 630 (1957) (allowing plaintiff to bring an action in district court to recover overcharges for the use of the city's sewer facilities, noting that the ordinance in question "did not provide any administrative remedy at all," and that the only way for the plaintiff "to obtain a refund for the overcharges" was to bring suit). Here, unlike the city involved in *Knutson Hotel,* the City of Oak Park Heights provided an administrative process for refunds. *See id.* at 397, 84 N.W.2d at 627.

Our reasoning in *City of Shorewood v. Metropolitan Waste Control Commission,* 533 N.W.2d 402 (Minn.1995), and *Youngstown Mines Corp. v. Prout,* 266 Minn. 450, 124 N.W.2d 328 (1963), supports rejection of the proprietary-governmental distinction in determining the proper method to review municipal decisions. In *City of Shorewood,* the city was involved in the proprietary activity of selling sewer services to its residents that were provided by the Metropolitan Waste Control Commission. 533 N.W.2d at 403. When the Commission billed the city to cover a shortfall in the previous year's estimated costs for sewage services, the city refused to pay, and the Commission authorized the levy of a deficiency tax against property within the city. *Id.* The city brought an action for declaratory judgment, challenging the Commission's allocation of costs and imposition of a tax levy. *Id.* We concluded that the district court lacked subject matter jurisdiction because certiorari was the exclusive method to review the Commission's "estimation of contemplated annual usage

and the adjustment of previous estimates to conform with actual usage." *Id.* at 404.

In *Youngstown*, we held that certiorari was the appropriate mechanism for review even though the State's proprietary conduct was at issue. 266 Minn. at 488, 124 N.W.2d at 353. In *Youngstown*, the plaintiff entered into a lease with the State, allowing the plaintiff to extract minerals from land in exchange for the payment of royalties to the State. *Id.* at 454, 124 N.W.2d at 334. The plaintiff submitted a claim for a refund of royalties to the Commissioner of Conservation. *Id.* at 454–55, 124 N.W.2d at 334. The Commissioner denied the refund, and the plaintiff petitioned for a writ of certiorari. *Id.* at 455, 124 N.W.2d at 334. After finding that the State was "[c]learly ... act[ing] not in its sovereign, but in its proprietary, capacity, subjecting itself to the same liability as other litigants," we determined that, because the Commissioner had acted in a quasi-judicial capacity, certiorari was the only means by which to review the decision. *Id.* at 473–74, 483, 488, 124 N.W.2d at 345, 350, 353.

Additionally, we have consistently distinguished between liability of a municipal actor and the jurisdictional prerequisites to bring suit in other areas involving proprietary conduct. *Tischer v. Hous. & Redev. Auth. of Cambridge*, 693 N.W.2d 426 (Minn.2005); *Frasch v. City of New Ulm*, 130 Minn. 41, 153 N.W. 121 (1915). In *Frasch*, we considered whether the proprietary-governmental doctrine should apply to presuit notice. *Id.* at 41, 153 N.W. at 121. There a statutory provision required an individual suing a municipality to first serve the municipality with notice of the claim. *Id.* at 42, 153 N.W. at 121–22. Even though the city was engaged in the proprietary function of supplying water and therefore could be held liable for negligence "to the same extent as ... a private owner," we concluded that "the

Legislature is not, because of similarity of liability, precluded from making distinctions between municipalities and private corporations in respect to conditions precedent to suit." *Id.* at 43, 153 N.W. at 122.

Similarly, in *Tischer* we distinguished between the method of reviewing a municipality's decisions and determination of a municipality's liability. 693 N.W.2d at 428. In *Tischer*, the plaintiff challenged the decision of the Housing and Redevelopment Authority (HRA) to terminate her employment. *Id.* at 427. Tischer argued that Minn.Stat. § 469.014 (2010), providing that the HRA "shall be liable in contract or in tort in the same manner as a private corporation," created an exception to the general rule that certiorari is the exclusive method to review an executive body's termination decision. 693 N.W.2d at 427–28. We disagreed, concluding that the statute referred only to liability and did not govern subject matter jurisdiction. *Id.* at 430. Even though the HRA could be liable like a private corporation, it could not be sued in the same manner, and Tischer was required to comply with the jurisdictional prerequisites for challenging the HRA's decisions by bringing a writ of certiorari. *Id.* at 432. *Tischer* and *Frasch* support our conclusion that the decisions a municipality makes in a proprietary capacity are not removed from the general rule requiring review of a municipality's quasi-judicial decisions by certiorari.

Our precedent supports the conclusion that the proper focus, in determining appropriate judicial review, is on the nature of the municipal decision, and not the nature of the specific enterprise at issue. We therefore reject the proprietary-governmental dichotomy to determine the manner of judicial review of municipal decision-making.

We conclude that, absent a statute or appellate rule to the contrary, the exclu-

sive method to obtain judicial review of a municipality's quasi-judicial decision is a writ of certiorari under Minn.Stat. ch. 606. The determination of whether a decision is quasi-judicial or legislative is made by examining whether the municipality: (1) investigated a disputed claim and weighed evidentiary facts; (2) applied those facts to a prescribed standard in a properly-enacted ordinance or rule; and then (3) made a final and binding decision regarding the claim. *See MCEA*, 587 N.W.2d at 842. We believe that this approach properly focuses on the nature of the municipality's decision. Moreover, it is objective in nature, is relatively easy to apply, and provides results that are predictable.

The City Council's decision to deny the County's overcharge claim was quasi-judicial in nature, and no statute or appellate rule provided the County with a right to review of that decision in district court. As a result, the exclusive method of judicial review was through a writ of certiorari under Minn.Stat. ch. 606. Because the County did not bring a petition for certiorari to challenge the City's decision, the district court lacked subject matter jurisdiction over the County's unjust enrichment claim. Therefore, we reverse and remand for entry of judgment in favor of the City of Oak Park Heights.

Reversed and remanded.